46 F.3d 1149
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re WEATHERITE, a California Corporation, Debtor.
Gary A. PLOTKIN, Trustee, Plaintiff-Appellant,
v.
R & H MYERS COMPANY, INC., formerly known as Myers Bros.
Construction Co. Inc., Defendants-Appellants.
 No. 93-55721.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1994.
Decided Feb. 7, 1995.
 
 Before: GIBSON,* HUG, and POOLE, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The bankruptcy trustee for Weatherite appeals the district court's affirmance of the bankruptcy court's decision in favor of R & H Myers Company ("Myers"). For reversal, the Trustee contends that the bankruptcy court erred in ordering that Weatherite's pre-petition payments to Myers and an escrow account be used in partial satisfaction of the judgment on Myers' counterclaim. We have jurisdiction pursuant to 28 U.S.C. Sec. 158(d) (1988), and we affirm.
 
 I. BACKGROUND
 
 3
 In July 1977, Myers sold its assets to Weatherite in exchange for 2138 shares of Weatherite common stock and an option whereby Myers could require Weatherite to repurchase the stock after five years had expired. The parties agreed on the following formula for computing the option price: the difference between Weatherite's assets and liabilities when the option was exercised; divided by the total number of outstanding shares; multiplied by the number of shares to be repurchased.
 
 
 4
 In June 1983, Myers notified Weatherite that it was exercising its option, and Myers deposited 2138 shares of Weatherite stock with the law firm specified in the option agreement. Using the financial statements that Weatherite provided in August 1983, Myers calculated the total stock value at $317,877.84. Weatherite, however, refused to pay the option price and submitted revised financial statements. These revised financial statements altered Weatherite's accounts receivable by over $1 million and changed its retained earnings from a surplus to a deficit. Weatherite claimed that these differences resulted because the prior financial statements had erroneously included its then-pending lawsuits as assets, which was not in accordance with generally accepted accounting principles ("GAAP").
 
 
 5
 Myers then sued Weatherite and obtained a pre-judgment writ of attachment. In order to avoid having its assets attached, Weatherite stipulated to make an irrevocable $120,000.00 payment to Myers in $5000.00 monthly installments, and thereafter, make additional $5000.00 monthly payments into an escrow account. The parties stipulated that the escrowed funds were intended as security in the event that a judgment was entered in Myers' favor and that the funds were not to be distributed until either another stipulation or a final judgment had been entered. From September 1984 to August 1986, Weatherite paid $120,000.00 to Myers, and from September 1986 to November 1987, Weatherite paid $70,000.00 into the escrow account.
 
 
 6
 In April 1988, Weatherite filed for relief under Chapter 7 of the Bankruptcy Code. The Trustee commenced an adversary proceeding and claimed that the $120,000.00 in payments and the escrow account were property of the bankruptcy estate. Myers counterclaimed and requested damages for breach of contract and a determination of its security interest.
 
 
 7
 The bankruptcy court found that Weatherite had not submitted sufficient evidence in support of its revised financial statements, that its witnesses were not credible, and that the financial statements Weatherite provided in August 1983 accurately reflected the corporation's net worth. The court concluded that Weatherite had breached the option agreement and entered judgment in favor of Myers for $317,877.84.
 
 
 8
 The bankruptcy court then determined that the $120,000.00 in payments was not property of the bankruptcy estate. The stipulation expressly provided that these payments were irrevocable, and therefore, on the petition date, Weatherite had no legal or equitable interest in these funds. The court rejected the Trustee's arguments that these payments were illegal under California law and should be avoided and turned over as provided by 11 U.S.C. Secs. 544[1] and 550.[2] Specifically, the court found that the Trustee had failed to prove that these payments violated Cal.Corp.Code Secs. 500[3] and 501,[4] which prohibit payouts when a corporation does not have enough retained earnings or is unable to meet it liabilities at the time of, or as a result of, the transaction.
 
 
 9
 The bankruptcy court also found that the escrow account was not property of the estate because Weatherite had only a contingent interest and did not have any control over these funds. Alternatively, the court found that Myers had a perfected security interest in the escrowed funds. Finally, the court rejected the Trustee's arguments that the option agreement and stipulation were executory contracts that terminated by operation of law under 11 U.S.C. Sec. 365.[5] The Trustee appeals.
 
 II. DISCUSSION
 A. Property of the Estate
 
 10
 The bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. Sec. 541(a)(1) (1988). We review the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. See In re Pizza of Hawaii, Inc., 761 F.2d 1374, 1377 (9th Cir.1985).
 
 
 11
 The Trustee argues that the bankruptcy court erred in determining that the $120,000.00 in payments was not property of the estate. In support of this contention, the Trustee complains that: (1) the court did not find that Weatherite was solvent on the date when each payment was made; and (2) the court did not determine that Weatherite's financial statements conformed with GAAP as required by Cal.Corp.Code Sec. 114.[6] The Trustee also argues that the bankruptcy court erred in determining that the escrow account was not property of the estate. The Trustee complains that: (1) because Weatherite is now insolvent, the bankruptcy court's disbursement of the escrowed funds constitutes an illegal shareholder distribution;[7] (2) Weatherite had both a legal and equitable interest in the escrowed funds; and (3) Myers did not have a perfected security interest in these funds.
 
 
 12
 In order to establish that the $120,000.00 in payments constituted improper distributions under California law, "the Trustee must show that at the time the payments were made, the corporation did not have enough retained earnings or was unable to meet its liabilities at the time of, or as a result of, the payments." Kupetz v. Wolf, 845 F.2d 842, 850 (9th Cir.1988). The bankruptcy court found that the Trustee had failed to establish that these payments, which ended almost two years before Weatherite filed for bankruptcy, violated Cal.Corp.Code Secs. 500 and 501. Furthermore, the court rejected Weatherite's "revised" financial statements and specifically found that the August 1983 financial statements accurately reflected Weatherite's assets, liabilities, and net worth. Based on these findings, we conclude that the bankruptcy court did not err in determining that the $120,000.00 in payments was not property of the estate.
 
 
 13
 We are also unpersuaded by the Trustee's arguments that the escrow account is property of the estate. The Trustee argues that the escrowed funds are being paid while Weatherite is insolvent because the distribution is being made through the bankruptcy court. See McConnell v. Estate of Butler, 402 F.2d 362, 367 (9th Cir.1968). However, the Trustee's reliance on McConnell is misplaced. In McConnell, this Court held that "the mere exchanging of stock for debentures would not constitute payment at the time the agreement was made since debentures are actually evidence of a corporate debt." Id. at 366-67. In this case, Weatherite's payments into the escrow account concluded almost six months before the bankruptcy petition was filed. "The 'time of payment' is when assets are actually paid out of the corporation," id. at 366, and the Trustee has failed to demonstrate that Weatherite's payments into the escrow account were made while the corporation was insolvent.
 
 
 14
 The Trustee's arguments that Weatherite had a legal and equitable interest in the escrowed funds also lack merit. Once the escrow account was created, Weatherite was left with only a contingent right to these funds, which could have vested if another stipulation or judgment was entered in its favor. Weatherite's contingent interest is now worthless in light of the fact that the bankruptcy court has entered judgment in favor of Myers. In short, the "transfer" that occurred when the escrow condition was met does not deprive Weatherite's bankruptcy estate of anything of value.[8]
 
 B. Executory Contracts
 
 15
 The issue of whether a contract is executory within the meaning of the Bankruptcy Code is a question of federal law. In re Wegner, 839 F.2d 533, 536 (9th Cir.1988). Although not defined in the Bankruptcy Code, courts have generally described an executory contract as one in which some performance is due on both sides. Id.
 
 
 16
 In this case, the option agreement was clearly not executory; Myers exercised the option and fulfilled its contractual obligation by tendering the stock. See In re Easebe Enters., Inc., 900 F.2d 1417, 1419 (9th Cir.1990) (noting that options are generally executory contracts until the option is exercised). Likewise, the stipulation was not executory; Weatherite made the payments to Myers and the escrow account before the bankruptcy was filed. The fact that a condition remained prior to the payout of the escrowed funds does not render the stipulation executory. Therefore, we conclude that the option agreement and stipulation were not executory contracts that terminated by operation of law.
 
 III. CONCLUSION
 
 17
 We AFFIRM the district court's order.
 
 
 
 *
 The Honorable Floyd R. Gibson, Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Pursuant to 11 U.S.C. Sec. 544(b) (1988), "[t]he trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim...."
 
 
 [2]
 Pursuant to 11 U.S.C. Sec. 550(a) (1988): "to the extent that a transfer is avoided under section 544 ... the trustee may recover, for the benefit of the estate, the property transferred ... from--(1) the initial transferee of such transfer or the entity or whose benefit such transfer was made...."
 
 
 [3]
 Pursuant to Cal.Corp.Code Sec. 500 (Deering 1977),
 Neither a corporation nor any of its subsidiaries shall make any distribution to the corporation's shareholders (Section 166) unless:
 (a) The amount of the retained earnings of the corporation immediately prior thereto equals or exceeds the amount of the proposed distribution; or
 (b) Immediately after giving effect thereto:
 (1) The sum of the assets of the corporation ... would be at least equal to 1 1/4 times its liabilities ... and
 (2) The current assets of the corporation would be at least equal to its current liabilities....
 
 
 [4]
 Pursuant to Cal.Corp.Code Sec. 501 (Deering 1977), "[n]either a corporation nor any of its subsidiaries shall make any distribution to the corporation's shareholders (Section 166) if the corporation or the subsidiary making the distribution is, or as a result thereof would be, likely to be unable to meet its liabilities ... as they mature."
 
 
 [5]
 Pursuant to 11 U.S.C. Sec. 365(d)(1) (1988), "[i]n a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract ... within 60 days after the order for relief ... then such contract ... is deemed rejected."
 
 
 [6]
 Pursuant to Cal.Corp.Code Sec. 114 (Deering 1977), "[a]ll references ... to financial statements ... and all references to assets, liabilities, earnings, retained earnings and similar accounting items of a corporation mean such financial statements or such items prepared or determined in accordance with generally accepted accounting principles then applicable...."
 
 
 [7]
 Pursuant to Cal.Corp.Code Sec. 166 (Deering 1977), " '[d]istribution to its shareholders' means the transfer of cash or property by a corporation to its shareholders without consideration, whether by way of dividend or otherwise, except a dividend in shares of the corporation, or the purchase or redemption of its shares for cash or property...." (emphasis added)
 
 
 [8]
 Because we agree with the bankruptcy court that the escrow account is not property of the estate, we need not reach the court's alternative finding that Myers had a perfected security interest in these funds